IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

TIMOTHY LESTER and ROBIN LESTER,
husband and wife,

    Plaintiffs,

v.                                        Civil Action No. 5:17CV46
                                                                      (STAMP)
C&J WELL SERVICES, INC.,
a corporation,
NOBLE ENERGY, INC.,
a corporation,
CONSOL ENERGY, INC.,
a corporation and
CNX GAS COMPANY, LLC,
a limited liability company,

    Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
NOBLE ENERGY, INC.'S MOTION TO DISMISS**

I.    Background

This civil action was removed from the Circuit Court of Marshall County, West Virginia. The case arises out of injuries that plaintiff Timothy Lester ("Mr. Lester") allegedly received while operating his employer's water truck on County Route 26 ("CR 26") in Marshall County. Mr. Lester's employer was C&J Well Services, Inc. ("C&J"), a defendant in this civil action. Mr. Lester was driving the truck to deliver water to a gas well pad owned and operated by a joint venture consisting of defendants Noble Energy, Inc. ("Noble"), CONSOL Energy, Inc. ("CONSOL"), and CNX Gas Company, LLC ("CNX") and, collectively with Noble and CONSOL, the "joint venturers"). C&J contracted with the joint

venturers to provide them with oil and gas field services, including the transportation, delivery, and removal of equipment and materials to and from the sites of the gas well pads operated by the joint venturers.

The complaint states that Mr. Lester was driving uphill on CR 26 at the same time two other drivers were operating tanker trucks hauling fluids to the joint venturers' well pads. The plaintiffs allege that Mr. Lester moved his truck as far to the right as possible to avoid oncoming traffic but was run off the road by the two tanker trucks coming from the joint venturers' well pads in the opposite direction. The complaint states that the roadway and shoulder of CR 26 collapsed, which caused Mr. Lester's truck to roll over the guardrail and down a steep embankment, where the truck struck a tree.

The complaint also states that the joint venturers' traffic plan for CR 26 required drivers driving uphill to call ahead over their radios and drivers driving downhill to respond by yielding to the uphill drivers. The complaint alleges, however, that the two downhill drivers did not yield to Mr. Lester when Mr. Lester indicated over his radio that he was driving uphill towards the well pad. The plaintiffs allege that the downhill drivers' failure to yield to him is what caused him to run off the road.

The plaintiffs then allege that Mr. Lester sustained severe and permanent injuries as a result of the accident. The plaintiffs

further allege that the joint venturers' traffic plan was dangerously deficient because it did not properly regulate the flow of heavy trucks on CR 26. Additionally, the plaintiffs allege that the joint venturers were negligent in the maintenance and repair of CR 26, which allowed the roadway and shoulder to become undercut, soft, and subject to collapse.

Noble filed a motion to dismiss or, in the alternative, for judgment on the pleadings. Noble is named in Count II of the complaint, which alleges that the joint venturers were negligent both in the maintenance and repair of CR 26 and in the formulation and implementation of a traffic control plan for CR 26. The plaintiffs base these allegations on two separate duties of care. First, Count II alleges that the joint venturers had a duty to maintain and control CR 26 by virtue of the permits issued to them by the West Virginia Department of Transportation, Division of Highways (the "WVDOH"). Second, Count II alleges that the joint ventures had a duty under West Virginia law to provide Mr. Lester, an invitee, with a reasonably safe workspace.

The plaintiffs filed a response in opposition to Noble's motion to dismiss. Noble then filed a reply to the plaintiffs' response. After a review of the parties' memoranda and the applicable law, this Court finds that Noble's motion to dismiss must be granted in part and denied in part.

3

II. <u>Applicable Law</u>

In assessing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept all well-pled facts contained in the complaint as true. <u>Nemet Chevrolet, Ltd v. Consumeraffairs.com, Inc</u>, 591 F.3d 250, 255 (4th Cir. 2009). However, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." <u>Id.</u> (citing <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009)). This Court also declines to consider "unwarranted inferences, unreasonable conclusions, or arguments." <u>Wahi v. Charleston Area Med. Ctr., Inc.</u>, 562 F.3d 599, 615 n.26 (4th Cir. 2009).

It has often been said that the purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or the merits of the case. 5B Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1356 (3d ed. 1998). The Rule 12(b)(6) motion also must be distinguished from a motion for summary judgment under Federal Rule of Civil Procedure 56, which goes to the merits of the claim and is designed to test whether there is a genuine issue of material fact. <u>Id.</u> For purposes of the motion to dismiss, the complaint is construed in the light most favorable to the party making the claim and essentially the court's inquiry is directed to whether the

4

allegations constitute a statement of a claim under Federal Rule of Civil Procedure 8(a). Id. § 1357.

A complaint should be dismissed "if it does not allege 'enough facts to state a claim to relief that is plausible on is face.'" Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Facial plausibility is established once the factual content of a complaint 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Nemet Chevrolet, 591 F.3d at 256 (quoting Iqbal, 129 S. Ct. at 1949). Detailed factual allegations are not required, but the facts alleged must be sufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

### III. Discussion

#### A. Duty of Care Arising from the WVDOH Permits

The plaintiffs allege that Noble had a duty of care as to CR 26 by virtue of the permits issued to it by the WVDOH. In its motion to dismiss, Noble contends that the plaintiffs' reliance on the WVDOH permits as a source of legal duty is misplaced. Noble acquired two sets of permits from the WVDOH. The first set consists of the Encroachment Permits, issued by the WVDOH pursuant to Section 17-16-6 of the West Virginia Code.[1] The WVDOH issued

---

[1] "No opening shall be made in any state or county-district road or highway, nor shall any structure be placed therein or thereover, nor shall any structure, which has been so placed, be

5

Encroachment Permits to Noble that permitted Noble to construct access roads to its well pads off of CR 26. The second set consists of the Commisioner of Highways' Oil and Gas Road Policy, pursuant to Section 17-4-47 of the West Virginia Code,[2] the Oil and Gas Road Bonding Agreement,[3] entered into pursuant to the Oil and Gas Road Policy, and addendums to those permits.

This Court finds that Noble is correct that none of those permits transferred responsibility for the construction, maintenance, and control of CR 26 to Noble. The Commisioner of Highways has "exclusive power over the construction, maintenance and control of [the state road] system." Thacker v. Ashland Oil & Refining Co., 41 S.E.2d 111, 116 (W. Va. 1946). Nothing in the relevant sections of the West Virginia Code or the two sets of permits does anything to transfer that exclusive control over CR 26, part of the state road system, to Noble.

---

changed or removed, except in accordance with a permit from the state road commission or county court, as the case may be." W. Va. Code § 17-16-6.

[2]"Reciprocal access between state highways and real property used or to be used for commercial, industrial or mercantile purposes and reciprocal access between state highways and real property that is subdivided into lots is a matter of public concern and shall be regulated by the Commissioner of Highways . . . ." W. Va. Code § 17-4-47(a).

[3]"As a condition of granting access to a state highway, the commissioner may require the owners of real property developed or to be developed to provide a bond in an amount the commissioner determines necessary to compensate the division for improvements to highway facilities required as a result of the development." W. Va. Code § 17-4-47(f).

Section XIV of Noble's Oil and Gas Road Statewide Bonding Agreement with the WVDOH specifically states that "[n]othing herein shall be construed to mean that [Noble] shall have any jurisdiction or control over any public roadways in the state road system." ECF No. 14-9 at 3. The Commissioner of Highways' scheme for permitting and posting security pursuant to permitting is not intended to impose on Noble and other real property owners broad legal obligations as to state-owned roadways. CR 26 is 5.61 miles long, and the Oil and Gas Road Statewide Bonding Agreement makes clear that Noble is not responsible for the entire 5.61 mile length by virtue of having access roads stemming from it. Rather, the permitting and security scheme is simply a means for the state to ensure that Noble has financial responsibility for damage it causes to state roads by virtue of its business activity.

Additionally, there is not sufficient evidence supporting the plaintiffs' allegation that Noble was negligent in the formulation and implementation of a traffic plan for CR 26. The addendum to the Oil and Gas Road Policy requires that Noble develop and maintain a traffic plan but does not impose any specific requirements as to its formulation and implementation. The only language in the policy related to a traffic plan is provided in paragraphs 10 and 11 of the addendum to the policy. Those paragraphs provide as follows:

> 10. The Facilities Owner/Operator shall be responsible for the development and maintenance of a traffic plan

7

> which shall be approved by the District Traffic Engineer. The Facilities Owner/Operator shall be responsible to provide all signing required for work zones, road closures, and detours.
>
> 11. When Facilities Owner/Operator impedes traffic for more than one hour, the Facilities Owner/Operator may be assessed a fine by enforcement personnel of all costs associated with exceeding the one-hour time limit. Incidents that require the use of law enforcement or emergency services personnel are not subject to the one-hour time limit.

ECF No. 14-8 at 4.

The traffic plan implemented by Noble is not attached to the complaint or the motion to dismiss. However, the Court finds that, even accepting the plaintiffs' allegations as to Noble's traffic plan as true, there is still not sufficient evidence to state a negligence cause of action arising from the permits. The complaint alleges that the traffic plan "mandated that heavy trucks laden with drilling equipment and drilling materials operating on CR26 southbound (uphill) call ahead on their CB radios for the road and periodically indicate their position along the road. Heavy trucks and equipment traveling in the opposite direction (downhill) would then yield to the southbound traffic." ECF No. 1-1 at 3. Even accepting this as true, the permits issued to Noble by the WVDOH specifically state that Noble does not have control of CR 26, a fact which is not changed by any traffic plan that Noble implemented. Furthermore, the plaintiffs never allege that the accident occurred near any point of entry to Noble's well pads. The existence of a traffic plan does not affect the Court's finding

8

that Noble did not owe Mr. Lester a duty of care as to all of CR 26 by virtue of any permit to occupy a point of entry on CR 26.

B. Duty of Care Arising from Parties' Relationship

The Court does find, however, that Noble may have owed Mr. Lester a narrow duty stemming from Mr. Lester's status as an independent contractor of Noble. "The owner or occupier of premises owes to an invitee such as a non-employee workman or an independent contractor the duty of providing him with a reasonably safe place in which to work and has the further duty to exercise ordinary care for the safety of such persons." Taylor v. Sears, Roebuck and Co., 437 S.E.2d 733, 733 (W. Va. 1993) (quoting Sanders v. Georgia-Pacific Corp., 225 S.E.2d 218, 219 (W. Va. 1976)). It is clear that Mr. Lester was an independent contractor of Noble. However, it is an issue to be developed in discovery whether Noble's duty as a premises owner extended to the site of the accident on CR 26. Thus, the Court's dismissal of the plaintiff's claim against Noble cannot encompass the potential duty owed by Noble to Mr. Lester as an independent contractor. Accordingly, the Court dismisses the complaint against Noble only in part, not in its entirety.

IV. Conclusion

For the reasons set forth above, Noble Energy, Inc.'s motion to dismiss (ECF No. 14) is GRANTED IN PART and DENIED IN PART. The motion to dismiss is GRANTED as to any alleged duty of care owed by

Noble Energy, Inc. to Mr. Lester as to County Route 26 by virtue of permits to occupy the premises.  The motion to dismiss is DENIED as to any alleged duty of care owed by Noble Energy, Inc. as to Mr. Lester by virtue of their independent contractor relationship.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:    September 28, 2017


/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE